UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF TEXAS

Plaintiff,

Alper Karaali

     v.                          NO. --------------------------------

Defendant,

Matthew Hoffman and

James C. Lee

## INTRODUCTION

Alper Karaali hired bankruptcy attorneys Matthew Hoffman and James Lee  for chapter 11 bankruptcy filing for Plaintiff's company Tien Shan inc. on 08/31/2011. Alper Karaali's  litigation attorney James Musslewhite was present during the meeting for hiring process. Attorney Matthey Hoffman presented himself as 40 years experienced attorney in bankruptcy cases. Alper Karaali had a dispute for the remaining balance of his property's mortgage with the oil company  Petroleum Wholesale and needed bankruptcy protection and interference to stop foreclosure of this property.

## PARTIES

Plaintiff, Alper Karaali, Pro Se, was the owner of Tien Shan inc. and was  client of attorneys Matthew Hoffman and James Lee.

538 Ivy Cross lane   Sugar Land , Texas  77479

ph. 281-704-0052          atkaraali@aol.com

1

Defendants, Matthew Hoffman and James Lee law firm.

Matthew Hoffman

2777 Allen Parkway, suite 1000 Houston, Texas 77019

ph. 713-654-9990          mhof1100@aol.com

James C. Lee

CJH & ASSOCIATES, P.C.  1440 Broadway, suite 1000, Oakland, CA 94612

ph. 510-817-0808


## JURISDICTION

The Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.


## CLAIM

Plaintiff seeks total damages within the jurisdictional limits of this Court but not to exceed $10,000,000.00.


## FACTUAL BACKGROUND

Law firm of Matthew Hoffman and James Lee filed Chapter 11 bankruptcy for Alper Karaali's company, Tien Shan inc. on Sep 2, 2011. Oil company wasn't delivering gas to Plaintiff's station and not allowing him to buy gas from somewhere else either, saying that Plaintiff has contract with them. Plaintiff couldn't pay mortgage and  became bankrupt. Attorneys

Matthew Hoffman and James Lee supposed to ask the Judge to reject to contract and allow Plaintiff to buy gas from somewhere else, make the money, pay the mortgage, everybody happy. Attorneys asked the Judge to reject the contract but forgot to notify oil company electronically and the Judge denied.

Attorneys made agreement with oil company to deliver gas to Plaintiff but when they cheated, refused to let Judge know. Oil co. again stopped delivering gas inside the bankruptcy but attorneys refused to inform the Judge.

Attorneys engaged negotiations with oil co. without Plaintiff's knowledge, despite Plaintiff's objection, offered to pay oil co. more money than owed, ask to borrow money from different oil co. on behalf of Plaintiff without his knowledge. Plaintiff caught attorneys making deal with oil co., just before the hearing, not to tell the Judge they stop delivering gas, in spite they agreed before the Judge.

Attorneys refused to file documents with the Court to show that oil company ask five times more than original upgrade cost.

Attorneys refused to ask to Judge's consent to use Plaintiff's rental income to pay utilities, refuses to request documents for discovery from oil co.

As Plaintiff finds out that oil co. is not the Debtor in this case and whole thing was a scam, warns the attorneys to request discovery.

Attorneys requested documents from tittle company and find out this was a fact but attorneys refused to inform the Judge. In spite, they inform the oil co. what they find out, resulted oil co. bring a different co. as a debtor to the case. Attorneys accepted both companies as co-debtor, disregarded Plaintiff's objections. Attorney's response was "they are not a kind of attorney that listen to their client".

3

As the oil co. stop sending gas inside the bankruptcy, Plaintiff asked the attorneys to request permission from Judge to buy gas from different place and ask to reject the contract. Instead, attorneys stipulated that they will not seek to reject contract, without informing and explaining to the Plaintiff.

Attorneys made major mistake and filed re-organization plan in 90 days of bankruptcy filing instead of 180 days. Plan rejected because of not giving enough time to give 30 days notice to the creditors. Attorneys refuses to correct their mistakes and re-file the plan.

As part of re-organization plan, Plaintiff applies to a bank for refinancing to pay off the debt. Bank approves the loan and appraises the property. Attorneys refuses to inform the Judge that refinancing ready and bank's appraisal was much higher than the securing the debt. Instead they inform the oil co. from bank's appraisal and of course oil co. hires appraiser that shows value of the property $1 million and files with the Court. Bank's appraisal was $2.1 million without the business value, in reality value was $3 million. Attorneys put no effort hiring another appraiser to support bank's appraisal.

Attorneys learned that bank condition to refinance if existing contract cancelled, otherwise since the oil co. not sending gas ,there was no way Plaintiff to sell gas and make money to pay the bank. Attorneys refuses to withdraw their stipulation to not to reject contract but instead continue offering more money to the oil co. to pay off the debt without Plaintiff's knowledge. Even Attorneys know how much bank is willing to lend, still offering oil co. more money, sabotaging refinancing and bankruptcy themselves

In spite of oil co.'s claim was $1.3 million at the beginning of bankruptcy for remaining $950,000 debt, suddenly on Nov 23, 2011 oil co. increases the claim to $1.4 million and Plaintiff's attorneys agreed without

4

any objection and of course without Plaintiff's approval. Matter of fact Plaintiff's attorneys suggested to the oil co. that debt is $1.4 million ,not $1.3.

Attorneys cuts deal with oil co. for $1.35 million debt and ask to bank lend more money, all without informing Plaintiff and his approval.

Plaintiff found out that Exxon's brand agreement would no longer be exist, cancelled by Exxon, so stipulating not to seek rejection of contract would be meaningless and Plaintiff asks the attorneys to withdraw stipulation and inform the Court. First, attorneys seems agreed but asking Plaintiff to get documents from Exxon to prove it to bankruptcy Judge. When Plaintiff supplies the documents from Exxon to prove it, attorneys changed their mind and refused to inform the Court and refused to withdraw their stipulation. Instead they made one more stipulation that oil co. never failed to sent gas, make sure that oil co. well protected.

As the attorneys refuses to withdraw stipulations, Plaintiff try to dismiss the case to avoid stipulations. Bankruptcy Judge says 'DISCLOSURE STATEMENT" was wrong, upon Plaintiff's request, attorneys refuses to correct the mistakes and file new one.

Attorneys not only put all the effort against to Plaintiff they represent but also did everything possible to cover oil co.'s mistakes like putting property foreclosure before legal date or hiding the appeal date from Plaintiff.


### PLAINTIFF SUES FOR BREACH OF FUDICIARY DUTY

Attorney Matthew Hoffman and James Lee, in spite of was hired and representing the Plaintiff, worked against to Plaintiff, made mistakes and refused to correct them, and helped to oil co. to foreclose Plaintiff's property, refused to take action to protect their client and do their job.

## JURY DEMAND

Plaintiff, Alper Karaali respectfully request a jury trial.


## PRAYER

Plaintiff respectfully request that The Court enter judgment against to Defendant for the fallowing.

a- Actual damages,

b- Exemplary damages,

c- Pre-judgment and post-judgment interest,

d- Future loss of income,

e- Future loss of credibility,

f- Mental and emotional pain, suffering and anguish,

g- Injury to Plaintiff's reputation.

h- Revoke the attorneys' licenses to practice law.

Dated December 10, 2015


Respectfully submitted

Alper Karaali, Plaintiff

538 Ivy cross lane

Sugar Land, TX 77479

ph. 281-704-0052

e-mail. atkaraali@aol.com

6

*this communication is strictly prohibited.  If you have received this communication in error, please erase all
copies of the message and its attachments and notify us immediately.  Thank you.*

**From:** Madden, Eric [                                        ]
**Sent:** Thursday, September 22, 2011 1:30 PM
**To:**
**Cc:** Lee, Kyung S.; Scholl, Jeanette
**Subject:** Tien Shan, Inc.

Matt:

You indicated that the Debtor would agree to a short continuance of tomorrow morning's hearing, but only if PWI agrees
to provide some fuel to the Debtor's store.  PWI will provide unbranded fuel now that the store is debranded and will
require payment upon delivery, in exchange for a 7-10 day extension of the hearing.  Are these terms acceptable to your
client?  If so, we can present the terms for court approval in an agreed continuance motion/order.

Best regards,

Eric

**From:** atkaraali <atkaraali@aol.com>
**To:** mhof1100 <mhof1100@aol.com>
**Date:** Sat, Sep 24, 2011 1:06 am


As I tought they delivered gas 8:45 pm, no price info.Driver called theis office but nobody knows our price, they didn't sent me. Now I see they sent it to you .My mistake ,I should warn you ask written today. Price supposed to to today's rack price, that was the agreement .They sent you last week's prices so cost $3.1850 but price today $2.9292 means $25 higher.They got me again, I sent you today's price as a separate mail so we can use next week.Also gas they dropped less than what the papers says. I'll fax you the documents tomorrow.I didn't turn the pumps on, best thing will be don't touch their gas and not try to sell ,wait for the next week, maybe we can show the judge they didn't kept the agreement.

**From:** Matthew Hoffman <mhof1100@aol.com>
**To:** atkaraali <atkaraali@aol.com>
**Subject:** RE: gas outage
**Date:** Thu, Sep 29, 2011 9:11 am

Dear Alper,

Fuel is on its way.  Should be there between noon and 6:00 p.m. today.

Regards,

Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)

*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

*This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL.  If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.  Thank you.*

**From:**             [                ]
**Sent:** Thursday, September 29, 2011 8:32 AM
**To:**
**Subject:** gas outage

station run out of regular gas as of 09/28/2011  8 pm

**From:**                    [                    ]
**Sent:** Thursday, October 13, 2011 9:06 AM
**To:**
**Subject:** stage 2 test

We have scheculed STAGE 2 test Monday Oct 17 as of State requirement.It must have certain level of gas in the both tanks to able to perform pressure test.Without this test we can not continue sell gas,State does not allow.What is PW's response for FMLA  conditions, if they OK. they have 4 days to send gas, if not,  are they cancelling FMLA?

**From:** Matthew Hoffman <mhof1100@aol.com>
**To:** atkaraali <atkaraali@aol.com>
**Subject:** RE:
**Date:** Thu, Oct 13, 2011 11:16 am

Dear Alper,

You are not authorized to use the rental income without consent of Petroleum Wholesale. It is *Petroleum Wholesale's cash collateral and must be used to pay on the Note owing to Petroleum Wholesale, or not at all.*

Regards.
Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)
*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately. Thank you.

**From:**                          [                          ]
**Sent:** Thursday, October 13, 2011 9:18 AM
**To:**
**Subject:**

Mr. Hoffman,

Tien Shan's current business level will not allow operate without use of $4,000 monthly rent to pat the utility bills and employee, especially coming months for the licence and permits and insurances due.Plus  I won't be able to repair remaining 3 pumps as I planned.Do we have to accept to pay them that rent or judge will decide that.

SECONDLY, 'SALE AND PURCHASE AGREEMENT"with Craig Stavinoha  says that I have to accept any contract between Craig and PW.Does not says "deed of trust security agreement "between Tien Shan and Craig transferable or I authorized such a transfer .I don't recall signing such a document.

**From:** atkaraali <atkaraali@aol.com>
**To:** mhof1100 <mhof1100@aol.com>
**Subject:** Re: stage 2 test
**Date:** Thu, Oct 13, 2011 9:16 pm

Mr. Hoffman, are you still my attorney or just carrying the communications between PW and I.If they are not canceling FMLA, when we are starting FMLA  conditions so we can go back in business .I talked with environmental co., They will skip pressure test for the future if we don't have 1,500 gallon gas in each tank but you don't tell that to  PW, MAIN IDEA TO GO BACK BUSINESS..Still they need some gas in each tank to test to nozzles.It is cost $600-700, if we are not going to sell gas no need to spend money.
Do we just return that info they requested, or wait for theirs or challenge it.
Aren't  we gonna challenge for the rent money?
During STAGE 2 test they will pump a lot of gas that will be added back to tank, how they will credit us, they didn't get first one yet.
I didn't get invoice for the last payment.
Stuart Laap's mail said you agree on monetary damages for FMLA ,please don't be agree on anything without telling me  FMLA  doesn't have any value at the moment, they de branded the station.
We are right, we are honest, we don't have anything to hide, either they do FMLA business honestly, we go back to life in 3 months or they refuse.
 to do business FMLA, WE GO WITH SOMEBODY ELSE
Please get some time for me, Fri I order appraisal, Start collecting written offers from other companies, will be document on your hand PW canceled FMLA with no charge on other station, also you have their mail to me offering FMLA cancellation without charge.
I will prepare all the documents as package for you, make it easier, since they don't wanna negotiate don't worry, we give best shot, but please give the BEST SHOT.
DON'T FORGET, they were cheating all Houston on my station, got caught, State punished them ,helped me. Next week I'm taking the 3rd. station to Jeff Musslewhite, I'm not the only one ,they are cheating everybody. Ask them officially if they will perform the FMLA or not.
-----Original Message-----
From: Matthew Hoffman <                    >
To: atkaraali <                    >
Sent: Thu, Oct 13, 2011 1:15 pm
Subject: RE: stage 2 test

Dear Alper,

        PW is not canceling FMLA. I will tell PW about the State 2 test on Monday, October 17, 2011, and the need to have certain level of gas in both tanks (what is that level?) to perform pressure test.

Regards,
Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)
*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately. Thank you.

**From:** atkaraali <atkaraali@aol.com>
**To:** jeff <jeff@nacol-law.com>
**Subject:** Fwd: single asset real estate
**Date:** Sun, Oct 16, 2011 8:43 pm

you'll see he will find excuses to not to do anything.

-----Original Message-----
From: atkaraali <               >
To: mhof1100 <               >
Sent: Sun, Oct 16, 2011 8:42 pm
Subject: single asset real estate

first  handicap PW has convinced the judge this is single asset real estate chapter 11.In my case there is real
estate bringing $5,200 rental income but also there is tien shan's  business have income and operation, so it is
not single asset.
secondly if the judge doesn't wait for the reorganization plan, debtor still have 90 days from filing (in our case
Dec 2) to start making interest payments to stop chapter 7 conversion.

Now we already used half of this 90 days and it is obvious PW WILL DO EVERYTHING TO NOT TO SEND
GAS OR SEND VERY EXPENSIVE OR SEND NOT ENOUGH etc.Now since it is early to ask for cancellation
of FMLA  at least we can ask the judge to allow temporarily get the gas from somewhere else  until we submit
the plan, so I can start payments next 45 days, we have enough evidence now show the judge they are
showing excuses to not to send gas.( I told you I'm one of the best in the world)

From: atkaraali <atkaraali@aol.com>
To: mhof1100 <mhof1100@aol.com>
Subject: Re: Tien Shan, Inc. -- Rule 2004
Date: Mon, Nov 7, 2011 7:26 am

Again I feel we are loosing control
FACTS:
1-WE DO NOT ACCEPT Sun Development as a creditor or a party on this chapter 11.Sun dev. has no
business relation with debtor .We are objecting SUN being brought in the case and asking dismissal of both
motion by PW WITH THAT REASON.
2-did we get anything from real estate attorney or Stewart Tittle regarding NO FURTHER paper you were
talking about, because sometimes this month we will ask the judge throw PW as a secured creditor ,at least we
will try
3- And please don't forget we don't have another source more than bank's $1.05 million at this moment, unless
conditions changes with PW like
    -judge accept to re-adjust remaining of the        . eventually we will ask the judge
    -they re brand the station, eventually we will ask the judge
    -or suddenly they cancel the oil agreement like they did to other stations
    PLEASE don't recognize  Sun DEV. as a creditor, they are not at the moment, neither PW according to their
exhibits.

-----Original Message-----
From: Matthew Hoffman <                        >
To: EMadden <                    >
Cc: slapp <                      >; dmiller <                      >
Sent: Fri, Nov 4, 2011 3:44 pm
Subject: FW: Tien Shan, Inc. -- Rule 2004

Dear Eric,

        This will           our telephone discussion earlier this afternoon, as follows:
    You asked how much time Tien Shan would need relative to a "drop dead" date for funding the Note
held by Sun Development/Petroleum Wholesale;
        o I told you that Tien Shan's intention is to get its Plan of Reorganization on file by the end of
            November, 2011, provided it can get a firm, written "take out" loan commitment for
            $1,050,000 (also allowing the Debtor to affirm the FMLA with Petroleum Wholesale) from
            American              by that date;
        o Since Tien Shan's Chapter 11 case is a Small Business Case, the statute allows (up to) 180 days
            for the Debtor to file a Plan of Reorganization.  Nevertheless, Tien Shan intends to proceed
            with its joint Disclosure Statement and Confirmation Hearing, by the end of December, 2011,
            **provided the Court's docket permits**.  If so, the Plan's Effective Date can be (as early as) 14
            days after the                     signs (and enters) the Confirmation Order (i.e., by mid-
            January, 2012);
        o Accordingly, the "best case" deadline by which Tien Shan could be allowed to pay its creditors
            (including Sun Development/Petroleum Wholesale) pursuant to the terms of its confirmed Plan
            of Reorganization would be January 15, 2012.  Accordingly, we think that a date in early,
            middle or late February, 2012 would be an appropriate "drop dead" date for payoff of the
            allowed Note amount;
    You also inquired as to the possibility of an earlier, "interim" deadline for commitments from the
Bank (for the $1.05 million loan) and whatever other revenue source would be needed to fund the
balance of the Plan obligations;

o I commented that there should be no need for an "interim" deadline, because the bankruptcy confirmation process, as expedited (i.e., 90 day Plan filing, instead of 180 days above, is already on a "fast track," and is (basically) self-executing, as follows:

Tien Shan's filing of its Plan by the end of November, 2011 and having its Plan confirmed by the end of December, 2011 (assuming the Court's docket permits);
The written loan commitment from the Bank will (obviously) need to be received by the end of November, 2011 and commitment(s) as to the other amounts needed to fund the Plan would need to be received by the end of December, 2011;

With respect to continuing the November 8, 2011 hearing on the Motion to Convert to Chapter 7, I had suggested 30 days, but you indicated that your client may want to shorten the continuance only to, say, 20 days.  Subject to the Court's schedule, why don't we try to re-schedule for December 1 or December 2, 2011?

Thank you for checking with your client representative regarding the foregoing and getting back to us, shortly.

Cordially,
Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)
*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

*This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL.  If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.  Thank you.*

**From:** Matthew Hoffman [                                        ]
**Sent:** Friday, November 04, 2011 12:28 PM
**To:** 'Madden, Eric'
**Cc:** '                                        ';  '
**Subject:** FW: Tien Shan, Inc. -- Rule 2004

Dear Eric,

Further in line with my (below) email of Wednesday (11/2/11) and my voicemail of a few minutes ago, please see attached the Baranski Valuation Group's Self Contained Appraisal Report, as of October 26, 2011, reflecting fair market value in the amount of $2.1 million.

Please also let me hear back from you regarding my email of yesterday regarding how we proceed as to next week's two hearings.

Cordially,

**From:** atkaraali <atkaraali@aol.com>
**To:** mhof1100 <mhof1100@aol.com>
**Subject:** Re: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization
**Date:** Thu, Nov 17, 2011 7:47 am

Mr. Hoffman, if I understand correctly you are still offering PW money for canceling the FMLA (now it increased from 200,000to 250,000-300,000) .Is that correct?total money we will be offering 1.3 M for everything ,not a penny more,please change the language.


-----Original Message-----
From: Matthew Hoffman <                    >
To: slapp <                    >
Cc: dmiller <                    >; EMadden <                    >
Sent: Thu, Nov 17, 2011 6:24 am
Subject: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization

Dear Stuart, Dan and Eric,

The purpose of this email is to discuss how we propose to work together for our respective clients' mutual best interest in accomplishing Tien Shan, Inc.'s reorganization by the end of this year. Based on Mr. Baranski's recent appraisal, Tien Shan has significant (as much as $700,000+) equity in the Noteholder's collateral which I think adequately protects the Noteholder's interest in the collateral, as follows:

- $1.3 million, inclusive of:
  - $39,000 – ad valorem tax payment reimbursement;
  - $1,258,227.96 – Petroleum Wholesale, L.P. is the (purported) holder of the Real Estate Lien Note, dated November 22, 2002, signed by Tien Shan, Inc. as Maker, and that the balance of the Note as of December 6, 2010 was $1,258,227.96, and the current monthly payment of the Note as of December 6, 2010 was $11,350.47;
  - $42,550.00 – attorneys' fees awarded, including costs, mediation fee of $650.00 and arbitration fee of $4,250.00;
  - Post-judgment interest on the entire amount from the date of this judgment – records reflect post judgment interest rate for March, 2011 to be 5%;
- vs. $2 million+ scheduled (9/2/11) Fair Market Value;
- vs. $2.1 million (10/28/11) Appraised Value:
  - 2011 - $2.1 million – The Baranski Valuation Group's appraisal;
  - 2007 - $1.7 million – The Baranski Valuation Group's appraisal.

<u>Tien Shan's Plan of Reorganization</u>. Tien Shan's proposed Plan of Reorganization is fairly simple and, I think, feasible, as follows:

- **Affirm Fuel Marketing Location Agreement**, unless the parties agree to terminate the FMLA (Debtor has already stipulated not to seek termination, **but** we learned the day before yesterday from American First National Bank (the "Bank") that **the Bank really wants the FMLA to be terminated, as a condition of making a loan or loans in any amount(s) to the Debtor**). Previously, I had thought that Mr. Karaali was the only person who had wanted the FMLA to be terminated, so the Bank's position was surprising to me;
- As I appreciate it, the Noteholder is willing to accept $1.3 million to pay off the Note (inclusive of ad valorem tax payment reimbursement, etc.). Despite Tien Shan's (previous) view that $1.05 million **should** have been sufficient to purchase the Note, we recognize that the Arbitration Award has already

been formalized into a State Court **Final Judgment** – notwithstanding the fact that the Final Judgment was appealed by Tien Shan's Attorney Robert Kouts;

  o Stuart, you have made it abundantly clear to us (on more than one occasion) that $1.3 million is the (**minimum**) amount that the Noteholder(whether Sun Development or Petroleum Wholesale) will accept to assign the Note and first lien position (to American First National Bank, or to anyone else);

- Pay Secured Creditor/Noteholder – Sun Development or its assignee (up to) $1.3 million from:
  o **$1.05 million** takeout loan from American First National Bank, payable on the **Effective Date**; plus (two options for Sun Development/Petroleum Wholesale to choose from):
      ▪ **$250,000 to $300,000** – additional loan from the Bank, payable on the **Effective Date**, to compensate Petroleum Wholesale for agreeing to terminate the FMLA, secured by a junior (second) lien on the Property behind the Bank's (expected) first lien on the Property; or
      ▪ **$250,000 to $300,000** – by supplemental investment (i.e., possibly an alternate fuel supplier/oil company) on the **Effective Date**. (This option would only work if your client(s) wanted to terminate the FMLA);
  o **Alternatively**, the entire $1.3 million could be paid by Tien Shan, Inc. to Secured Creditor/Noteholder over a 20 year time period (vs. 11 years that were remaining on Promissory Note prior to its recent acceleration), with all parties continuing to be bound by the terms of the FMLA;
- The Debtor has agreed to pay the $3,200 net rental proceeds cash collateral over to Sun Development (or Petroleum Wholesale), the holder of the Note;
- Debtor intends to order, obtain and sell sufficient fuel (at rack prices) to operate on at least a breakeven (inclusive of Note payments) or profitable basis. I believe that the Disclosure Statement projections will reflect a positive cash flow within no more than 3 months from now;
- Debtor also requests Petroleum Wholesale to re-brand the Station (including making at least some of the needed repairs – ideally, with financial assistance from the oil company which Petroleum Wholesale utilizes), as part of a long-term commitment to Tien Shan's ongoing operation;
- We will be filing Debtor's Plan of Reorganization on or **before** November 30, 2011 (as soon as we have the Bank's written commitment for the $1.05 million payment on the Effective Date, and (possibly) also the additional $.25 million to $.3 million payment on the Effective Date, depending on which of the (above-listed) 3 payment options your client(s) selects);
- We will also seek confirmation of Debtor's Plan of Reorganization on or before **December 31, 2011**;
- We hope (subject to the Court's docket convenience) to achieve an Effective Date of as early as **January 15, 2012**.

In our pleadings to the Bankruptcy Court, we have asserted that Tien Shan's (improved) real estate not only has significant equity, but is also necessary for an effective reorganization of the Debtor's business operations, as its only source of revenue. As you know, Tien Shan's revenue is derived from the following three sources:
- Sale of fuel;
- Sale of store goods/merchandise; and
- Rental income from:
  o $4,000 per month – TS Imports, Inc.; and
  o $1,200 per month – C & J Columbian Restaurant;
  o Again, the Debtor has agreed to pay the $3,200 net rental proceeds cash collateral over to Sun Development (or Petroleum Wholesale), the holder of the Note.

In order to get the Debtor's Plan of Reorganization on file by the end of November, 2011, our client representative is **now** in the process of obtaining a firm, **written "take out" loan commitment** for the **$1,050,000** (which commitment would either allow the Debtor to affirm its FMLA with Petroleum Wholesale, or the Bank would loan an additional $.25 million to $.3 million, also payable on the Effective Date, to compensate Petroleum Wholesale for agreeing to terminate the FMLA, with the additional $.25 million to $.3 million being secured by a junior (second) lien on the Property behind the Bank's (expected) first lien on the Property) **by no later than November 22, 2011**. In this connection, my Associate, James C. Lee, met with Mr. Sin (at the Bank) the day before yesterday.

We are also working with Mr. Karaali to put together solid Plan projections showing positive cash flow from operations from which additional funds (e.g., $250,000, or more – to cover closing costs with the Bank and costs of administration to complete this Chapter 11 case) can be generated within no more than 60 months (at least as to the secured indebtedness owing to your client(s)). Mr. Karaali testified on Thursday (11/3/11) regarding certain re-branding costs (which he believes that the oil company which Petroleum Wholesale elects to use should (hopefully will) agree to fund, but which Tien Shan may – at least in part – have to pay). We certainly recognize that (unless the parties agree otherwise) Tien Shan will have to raise at **least** the $1.05 million, plus **at least** $250,000 in additional funds, in order to demonstrate to the Court that its Plan is feasible and, therefore, confirmable.

My client representative and my firm are willing to cooperate **fully** with your client(s) by:

- Carefully, diligently, effectively and immediately ordering fuel in sufficient amounts to sustain a profitable (i.e., by November or December, 2011) operation, which will support needed (positive) cash flow projections to generate (within a reasonable period of time) the additional $250,000+ necessary to confirm Tien Shan's Plan and emerge from bankruptcy by January, 2012;
- Complete negotiations and to obtain written loan commitment by no later than November 22, 2011, for at least $1.05 million, or up to as much as $1.3 million – to be available on or before the Confirmation Hearing date (e.g., December 31, 2011) and to be payable (to your client(s)) by no later than the Effective Date;
- Pursue (immediately and effectively) and secure a re-branding commitment from Petroleum Wholesale and its participating oil company;
- Reaching agreement with Sun Development or Petroleum Wholesale to assign its Note and security interest to American First National Bank for (no more than) $1.3 million (inclusive of Arbitration Award, advanced ad valorem tax payments, etc.);
  - We would certainly expect that in order to obtain Sun Development/Petroleum Wholesale's **cooperation and possible joinder** in Tien Shan's (consensual) Plan of Reorganization, Sun Development/Petroleum Wholesale would require the Debtor to achieve certain milestones by early dates certain, e.g.:
    - File Plan by end of November, 2011;
    - Obtain American First National Bank's written loan commitment(s) before end of November, 2011;
    - Fund "takeout" loan by sometime in January, 2012. In other words, the Plan would have to be confirmed by the end of December, 2011 with a mid-January, 2012 Effective Date;
- Discontinuing all (bankruptcy) litigation efforts with Petroleum Wholesale/Sun Development.

Please let me know whether you and your client(s) are willing to favorably consider the foregoing plan of action. Thanking you, in advance, we remain

Yours truly,

**AMERICAN FIRST**
**NATIONAL BANK**

August 11, 2011

Tien Shan, Inc.
3151 S. Dairy Ashford
Houston, TX. 77082

Re:     Proposed to refinance the Real Property: Gas Station/C-Store located at 3151 S.
          Dairy Ashford, Houston, TX. 77082

Dear Mr. Alper T. Karaali

American First National Bank ("Lender") is interested in pursuing the following loan
subject to the terms and conditions as below:

| | |
|---|---|
| Borrower: | Tien Shan, Inc. |
| Amount: | $1,258,000.00 (One Million Two Hundred & Fifty Eighty Thousand Even). |
| Purpose: | To refinance the Real Property: Gas Station/C-Store located at 3151 S. Dairy Ashford, Houston, TX. 77082 |
| Interest Rate: | WSJ Prime + 0.75% floating with Floor Rate at 6.50% and Ceiling Rate at 9.0% |
| Term: | 5-years balloon with 20-years amortization. |
| Loan Fees: | Borrower shall pay 0.50% of credit amount loan origination fee to Lender at the time when the commitment letter is executed. |
| Conditions: | a) Requirement, Phase I & II Environmental Report |
| | b) Requirement, New/Updated Appraisal Report |
| | c) Termination of Fuel Agreement with Petroleum Wholesale, LP |

The foregoing is intended to provide an outline of the Lender's interest in making the
loan rather than a complete statement of the terms, conditions and documents that
would be required in connection with the loan. This letter does not constitute a
contractual commitment of the Lender to make a loan to Borrower on these or any
other terms. Borrower release Lender from any and all liability resulting from the
letter.

There are no unwritten oral agreements between the parties.

Very truly yours,

American First National Bank

By: _____
Name: Kelvin Sin
Title:  Vice President/Lending
Date:  8/11/2011

**From:** Matthew Hoffman <mhof1100@aol.com>
**To:** atkaraali <atkaraali@aol.com>
**Subject:** RE:
**Date:** Wed, Nov 23, 2011 5:50 pm

Dear Alper,

           Please see my responses to your email below, in red and bold.

Regards,

Matthew Hoffman

**From:**                    [                    ]
**Sent:** Tuesday, November 22, 2011 10:08 PM
**To:**
**Subject:**

I read it more, just after your stipulation we do require re brand and repairs.what does stipulate means here legaly by the way. **(Stipulating basically means declaring or making an agreement.)** What if they stop sending gas again, because soon or late gas prices start increasing again and they will loose $30,000 /month or stop sending gas. **(If Petroleum Wholesale stops sending gas, by absolutely no fault on your part or Tien Shan's, then we "might" have a basis to bring that issue to the Bankruptcy Court. Thus far, however, Petroleum Wholesale sends gas to you and you pay Petroleum Wholesale for the gas.)**

Another thing comes to my mind, since PW wasn't note holder, whole law suit and arbitration award should be declared ...... what? Mistrial? Dismissed? Non-suit? **(Let me make this clear, Alper, there is a <u>Final</u> Judgment which was appealed (but is now abated), and Attorney Kouts is not willing to prosecute the appeal, nor is my firm. The <u>Final</u> Judgment states, in pertinent part, that "Petroleum Wholesale, L.P. is the holder of the Real Estate Lien Note dated November 22, 2002." Accordingly, until, and unless, you were to appeal, successfully, the <u>Final</u> Judgment, the Bankruptcy Court is not able to grant a "mistrial," "dismissal," or "non-suit" of that <u>Final</u> Judgment. As we told you (about a week ago), we intend to file by November 30, 2011 a Disclosure Statement and Plan of Reorganization based on our 11/17/11 email to Petroleum Wholesale/Sun Development's counsel. We are hopeful (but no guarantees) that the Plan may be favorably received by the Bankruptcy Court, if not also by Sun Development/Petroleum Wholesale.)**

**From:** atkaraali <atkaraali@aol.com>
  **To:** mhof1100 <mhof1100@aol.com>
  **Cc:** jeff <jeff@nacol-law.com>; jccowgill <jccowgill@cowgillholmes.com>
**Subject:** Re: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization
  **Date:** Tue, Nov 29, 2011 9:12 pm

Why you can't argue with PW's math, use calculator, their calculation wrong.We did not apply to the bank yet, because we don't know pay off amount yet, is there different negotiations than the e-mails I'm seeing?Why we are accepting PW's claims as they are keep going up?


——Original Message——
From: Matthew Hoffman <                    >
To: atkaraali <              >
Sent: Mon, Nov 28, 2011 12:30 pm
Subject: FW: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization


**From:** Matthew Hoffman [                    ]
**Sent:** Monday, November 28, 2011 12:30 PM
**To:** Madden, Eric <                    > (                    )

Cc:            :

**Subject:** FW: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization

---

**From:** Madden, Eric D. [                        ]

**Sent:** Wednesday, November 23, 2011 1:49 AM

**To:**        :

**Cc:**

**Subject:** Re: Rule 408 - Settlement Negotiations / Inadmissible in Evidence - Tien Shan, Inc. / Plan of Reorganization

Matt – Thank you for your email setting forth the Debtor's proposal regarding a potentially consensual Chapter 11 plan. We have the following questions/concerns about that proposal:

1. PW's claim under the Note is no longer $1.3 million. According to your own calculations, PW's claim is comprised of: (a) $1,258,227.96, the outstanding principal balance as of December 6, 2010; (b) $42,550 in attorney's fees, mediation fees, and arbitration fees awarded in the final judgment; (c) $39,000 in ad valorem taxes paid by PW; and (d) $56,752.35 in unpaid monthly payments for July through November 2011. Thus, PW's claim is nearly $1.4 million before including post-judgment interest and additional attorney's fees incurred since entry of the final judgment. **(I cannot argue with your math. Petroleum Wholesale's claim is $1.39 million+.)**

2. The Debtor's first proposed option for paying PW's claim under the Note would be to obtain: (a) $1.05 million through loan from American First National Bank; and (b) $250,000 to $300,000 from either an additional loan from the Bank or a supplemental investment (possibly from an alternate fuel supplier/oil company). We have several concerns regarding this option. First, did the Debtor receive a firm loan commitment letter from the Bank by November 22nd, as promised? If so, please forward a copy of that letter to us. Second, this option would require an agreed termination of the FMLA, but would provide no consideration whatsoever to PW in exchange for agreeing to terminate its 40-year supply contract. This option, moreover, would not even pay PW's entire claim under the Note. Accordingly, this option is simply not acceptable to PW. **(The Debtor received an indication (by way of Mr. Sin's (11/15/11) meeting with Debtor's counsel, James C. Lee) of an 80% likelihood that the Bank's loan committee will approve the $1.05 million and up to an additional $250,000 to $300,000 "to compensate Petroleum Wholesale for agreeing to terminate the FMLA, secured by a junior (second) lien on the Property behind the Bank's (expected) first lien on the Property." The written commitment has not yet been sought or received, but only because I was unable to obtain an affirmative response (to my November 17, 2011 (proposal) email) from you and your clients before the scheduled November 21, 2011 loan committee meeting. You are correct that other than a maximum loan amount of $1.35 million, the Bank's conditional willingness to lend provides no additional consideration to Petroleum Wholesale/Sun Development for satisfying both the Note and the proposed agreed termination of the FMLA. I had hoped that you and your client (s) representatives would find this (maximum) loan amount acceptable or, at least, near acceptable.)**

3. The Debtor's second proposed option would be to pay PW's claim under the Note over a 20-year period with all parties continuing to be bound by the FMLA. First, what interest rate and terms does the Debtor have in mind for this option? **(Probably, no more than 4% or 5% per annum, simple interest.)** Second, how would the Debtor cure past defaults and provide adequate assurance of future performance under the FMLA, particularly given the concerns noted below? **(My hope is (was) Petroleum Wholesale would work together with the Debtor (similarly to the parties' recent fuel purchase arrangement) in this regard, focusing primarily on future performance.)**

4. We have several concerns regarding the Debtor's ability to affirm the FMLA. First, is the Bank willing to make any loan to the Debtor if the FMLA is affirmed, given your comment that "the Bank really wants the FMLA to be terminated, as a condition of making a loan or loans in any amount(s) to the Debtor"? **(No, I honestly do not think (based on James**

Lee's 11/15/11 meeting with Mr. Sin) that the Bank is willing to agree to loan any monies to the Debtor, except in the context of termination of the FMLA.) Second, has the Debtor completed any analysis as to the amounts required to cure past defaults under the FMLA? (Not really, other than Debtor's management's view that the FMLA, as currently postured, has no (positive) monetary value.) Third, where will the Debtor obtain the funds necessary to cure those defaults? (Not really, other than Debtor's management's view that the FMLA, as currently postured, has no (positive) monetary value.)

5. We have several concerns regarding the feasibility of this proposed plan. First, do the Debtor's financial projections assume that the Station is re-branded? (Yes, I think this is a fair assumption.) Second, what are the Debtor's current estimates regarding the specific costs, improvements, and repairs needed to obtain re-branding? (I think the Debtor's management answered this question in detail in his recent BR 2004 Examination.) We believe those items could be approximately $300,000 or more in the aggregate. (Same answer, except that my recollection is that the number is much smaller, closer to $100,000 than $300,000.) Third, your proposal suggests that PW and/or the oil company should be willing to pay for some portion of these costs based (presumably) on the three proposal letters obtained from alternate suppliers. Those proposals, however, are inapplicable here for multiple reasons, including: (a) the incentive money (which was relatively small compared to the significant repair and re-branding costs facing the Debtor) would be payable only after the Debtor had completed (and funded) the necessary improvements and repairs (not necessarily); (b) the proposals were tied to minimum monthly fuel sales, which (based on historical performance) are wholly unattainable by the Debtor (not necessarily); and (c) the proposals involved new fuel supply contracts, not a fuel supply contract (like the FMLA) that has been in existence for many years already (agreed as to (c)). Fourth, assuming that PW and the oil company are not willing to fund the costs, improvements, and repairs to obtain re-branding, how does the Debtor intend to obtain those necessary funds? (No current, alternate plan.) Fifth, do the Debtor's financial projections take into account the fact that its lease with TS Imports would likely need to be terminated in order to re-brand the Station? (I believe the Debtor's management testified that, if necessary, the lease with TS Imports, Inc. could be modified to move that operation to the back of the Station. Moreover, at least one, alternate fuel supplier is willing to allow TS Imports' lease to continue.) Sixth, what are the specific components of the "at least $250,000 in additional funds" that you indicate would be needed "to demonstrate to the Court that [the] Plan is feasible"? (The additional $250,000 would increase the $1.05 million to $1.3 million in funds available on the Effective Date to pay to the Noteholder. Even if Petroleum Wholesale/Sun Development's claim under the Note is no longer $1.3 million (e.g., say, it is now $1.35 million) the Bankruptcy Court might find such a Plan providing for a $1.3 million cash component, coupled with a $100,000+ payout component to the Noteholder, to be feasible.) Seventh, how does the Debtor intend to obtain those funds? (From American First National Bank and/or from supplemental investment (e.g., alternate fuel supplier/oil company, friends or family of Debtor's shareholder).)

6. You have indicated that the Debtor will pay the $3,200 in "net rental proceeds" over to PW. (The Debtor has already paid (on 11/21/11) the first $3,200 to Sun Development, LP.) First, why is the Debtor proposing to pay only the net proceeds? (I think that the $4,000 per month from TS Imports, Inc. under the sublease contemplated the Debtor paying therefrom electricity, etc., on behalf of the sublease space. The $1,200 per month from C & J Columbian Restaurant was not to be paid for September or October, 2011 (except that C & J Columbian Restaurant was required to do certain roof repair). I think that the Debtor acknowledges owing the Noteholder $1,200 (less utility expenses, etc., applicable under the sublease agreement) from C & J Columbian Restaurant for the month of November, 2011. Similarly, I think that the Debtor would acknowledge owing the Noteholder $4,000 (less utility expenses, etc., applicable under the sublease agreement) for the months of October and November, 2011.) Under the deed of trust, the Debtor is required to "apply all rent and other income and receipts to payment of the note." The deed of trust also states that PW "shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising [PW's] rights and remedies and then to [Debtor's] obligations under the note and this deed of trust assumed in the order determined by [PW]." Second, it appears that the Debtor is proposing to pay the rental proceeds for only one month, not for the entire three months of the post-petition period. Why is that? (Again, I think that the Debtor acknowledges owing the Noteholder $1,200 (less utility expenses applicable under the sublease agreement) from C & J Columbian Restaurant for the month of November, 2011. Similarly, I think that the Debtor would acknowledge owing the Noteholder $4,000 (less utility expenses applicable under the sublease agreement) for the months of October and November, 2011.)

Please let us know your thoughts regarding these questions and concerns.

Best regards,
Eric

From: atkaraali <atkaraali@aol.com>
  To: mhof1100 <mhof1100@aol.com>
  Cc: jeff <jeff@nacol-law.com>; jccowgill <jccowgill@cowgillholmes.com>
Subject: Re: Tien Shan, Inc.
  Date: Tue, Nov 29, 2011 9:26 pm

Why I don't know anything about this ,why I'm not being informed,What are they proposing, instead of 1.3 they want 1.35 million for both note and the fuel agreement, do they giving that written or just bullshitting like last 6 years.Please inform me?


—————Original Message—————
From: Matthew Hoffman <                      >
To: kelvins <                  >
Cc: jcl.esq <                  >
Sent: Tue, Nov 29, 2011 10:58 am
Subject: Tien Shan, Inc.

Dear Kelvin,

        Please give me a call. I have the Petroleum Wholesale representatives in my office this morning (now) for the Appraiser's deposition. They are talking with us about a possible consensual Plan, including (for *the first time) the component of termination of the Fuel Marketing Location Agreement*. They require, however, before they will proceed further with the negotiations an indication from the Bank of its willingness to loan the Debtor $1.05 million and up to an additional $250,000 to $300,000 "to compensate Petroleum Wholesale for agreeing to terminate the FMLA, secured by a junior (second) lien on the Property behind the Bank's (expected) first lien on the Property." As you know, the Debtor has not sought from you the written commitment yet, but only because we were unable (up until now) to obtain any type of affirmative response (to my November 17, 2011 (proposal) email) from Petroleum Wholesale/Sun Development before the scheduled November 21, 2011 loan committee meeting. We have made clear to Petroleum Wholesale/Sun Development that other than a **maximum** loan amount of $1.35 million, the Bank's conditional willingness to lend provides no additional consideration to Petroleum Wholesale/Sun Development for satisfying both the Note and the proposed agreed termination of the FMLA. Hopefully, Petroleum Wholesale/Sun Development will find this (maximum) loan amount acceptable.

        Accordingly, please call me (on my cell – 713-819-2297) or here at the office (713-654-9990), and, if possible, send to me an email setting forth the Bank's conditional willingness to lend. Your courtesy and assistance in this matter are greatly appreciated.

Cordially,
Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)
*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

As I mention to you on the phone yesterday, March 2012 last day for PW can carry Mobil brand. Exxon kicked them out so the document I found on their exibits that shows cancelletion of PW's agreement with Exxon was true. That means they lied under oath that Tien Shan can't effort brand updates because brand no longer exist and the same lie they de branded us. So the fuel agreement no longer exist. I try to get some documents from Exxon, in the mean time should we inform the bancrupcy court?

Re: exxonmobil brand

**From:** atkaraali <atkaraali@aol.com>
**To:** mhof1100 <mhof1100@aol.com>
**Subject:** Re: exxonmobil brand
**Date:** Tue, Dec 20, 2011 9:55 pm

Mr. Hoffman ,you recall wrong, it is Plantif's exibit 2A ,tomorrow I'll fax you, we disscuss during my testimony and Eric asked if I know as a fact agreement between Exxon and PW IS NO LONGER EXIST AND MY ANSWER WAS NO.

——Original Message——
From: Matthew Hoffman <              >
To: atkaraali <              >
Cc: jccowgill <              >; jeff <              >
Sent: Tue, Dec 20, 2011 1:58 pm
Subject: RE: exxonmobil brand

Dear Alper,

      As you may recall, your proposed (i.e., the examination questions you provided to us) examination question referenced a Petroleum Wholesale exhibit, but when we turned to that exhibit (during the trial) the document you had mentioned to us was not there. We do not know that Mr. Miller "lied under oath that Tien Shan can't effort [effect(?)] brand updates because brand no longer exist and the same lie they de branded us" just because you heard a rumor from another gas station operator, much less do we know the fuel agreement no longer exists. Accordingly, there is nothing we can inform the Bankruptcy Court concerning this matter. If you get the documents from Exxon Mobil that you talked about trying to get, maybe that will change things.

Regards,
Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)
*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

*This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately. Thank you.*

**From:**              [              ]
**Sent:** Tuesday, December 20, 2011 8:37 AM
**To:**
**Subject:** exxonmobil brand

Mr. Hoffman,

**From:** atkaraali <atkaraali@aol.com>
**To:** mhof1100 <mhof1100@aol.com>
**Cc:** jeff <jeff@nacol-law.com>
**Date:** Thu, Jan 12, 2012 8:59 am

Mr. Hoffman ,didn't hear back from you regarding refilling 'DISCLOSURE STATEMENT", what were the mistakes in the current form.
I have to withdraw both stipulations; one for FMLA and the other for not running out of gas in Oct 2011.Emergency  also I have to let the judge know we are out of gas since Jan 6 and loosing $1,100 each day. Basically nothing  changed before we filed chapter 11 and will not if I can't reject this FMLA that not exist anymore. I hope no mistakes done for the deadlines .I also learned withdrawing STIPULATIONS ARE NOT A BIG DEAL ,actually even i can do it as a debtor's representative ,you just prepare the papers I'll sign.

From: Matthew Hoffman <mhof1100@aol.com>
To: atkaraali <atkaraali@aol.com>
Cc: jeff <jeff@nacol-law.com>; jccowgill <jccowgill@cowgillholmes.com>
Subject: Tien Shan, Inc.
Date: Thu, Jan 12, 2012 9:55 am

Dear Mr. Karaali,

You have instructed us to get this bankruptcy case dismissed, and we have filed dismissal pleadings pursuant to your instructions. We received a call yesterday from the Bankruptcy Court's Clerk exploring how long the dismissal hearing will take. I told her it will take virtually no time on our end. The Debtor is obviously not opposed to a dismissal, since Tien Shan, Inc. filed the Motion to Dismiss.

Accordingly, I intend to wait until the Bankruptcy Court sets the Debtor's dismissal pleading for hearing and help you attempt to get the case dismissed at the hearing. Filing a new disclosure statement would be totally inconsistent with this, and taking the position that the FMLA should be terminated or has been terminated or will be terminated is also inconsistent with the stipulation and previous announcements to this Court. I will not do it.

Cordially,

Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)

*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

*This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately. Thank you.*

From:                    [                    ]
Sent: Thursday, January 12, 2012 8:59 AM
To:
Cc:
Subject:

Mr. Hoffman ,didn't hear back from you regarding refilling 'DISCLOSURE STATEMENT". what were the mistakes in the current form.

**From:** Matthew Hoffman <mhof1100@aol.com>
**To:** atkaraali <atkaraali@aol.com>
**Cc:** jccowgill <jccowgill@cowgillholmes.com>; jeff <jeff@nacol-law.com>
**Subject:** RE: Tien Shan, Inc.
**Date:** Thu, Jan 12, 2012 6:19 pm

Dear Mr. Karaali,


Even if Petroleum Wholesale's basis for objecting to dismissal of Tien Shan, Inc.'s Chapter 11 case is that dismissal would somehow cancel the stipulation, there is still no basis to file a new Disclosure Statement to Tien Shan, Inc.'s Plan of Reorganization.  In fact, Tien Shan, Inc.'s Plan of Reorganization has been rendered moot and unconfirmable by Bankruptcy Judge Paul's Judgment ordering that the "automatic stay is lifted to allow Petroleum Wholesale, LP and Sun Development, LP to exercise their rights [i.e., foreclosure] to the real property located at 3151 South Dairy Ashford, Houston, Texas 77072."



Cordially,

Matthew Hoffman*
Law Offices of Matthew Hoffman, p.c.
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, TX 77019
713-654-9990 (Telephone)
713-654-0038 (Telecopier)

*Board Certified in Business Bankruptcy
Texas Board of Legal Specialization

*This message is intended only for the use of the Addressee and may contain information that is PRIVILEGED and CONFIDENTIAL.  If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited.  If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.  Thank you.*



**From:**                         [                         ]
**Sent:** Thursday, January 12, 2012 6:00 PM
**To:**
**Subject:** Re: Tien Shan, Inc.



Pw objected to dismissal, saying that it will cancel the stipulations. With withdrawing stipulations we are actually stopping PW to object to dismissal, perfect hit ,it is not inconsistent.



-----Original Message-----
From: Matthew Hoffman <                    >
To: atkaraali <              >
Cc: jeff <                       >; jccowgill <                         >